UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DR. TAM NGUYEN,<br><br>                 Plaintiff,<br>   vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a Political Subdivision of the STATE OF NEVADA; Police Officer NAKAGAWA (LVMPD #5476) individually and as a Police Officer; employed by the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; POLICE OFFICER JOHN DOES I-XX; and JOHN DOES I-XX, inclusive,<br><br>                 Defendants. | Case No.: 2:12-cv-01527-GMN-NJK<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment (ECF No. 51) filed by Defendant Nakagawa ("Officer Nakagawa") and a Motion for Summary Judgment (ECF No. 52) filed by Defendant Las Vegas Metropolitan Police Department ("LVMPD") (collectively, "Defendants"). Plaintiff Dr. Tam Nguyen ("Plaintiff") filed a Response (ECF No. 55) to both motions and Defendants filed a Joint Reply (ECF No. 56). For the reasons discussed below, the Court **GRANTS** both motions.

**I.   BACKGROUND**

This case arises out of Officer Nakagawa's arrest of Plaintiff after he was seen driving "in an unsafe and erratic manner." (LVMPD MSJ 2:16–17, ECF No. 52). The day before his arrest, on December 28, 2010, Plaintiff was admitted to the hospital and kept overnight. (Compl. ¶ 8). Plaintiff was diagnosed with Transient Ischemic attack and/or Transient Global Amnesia. (LVMPD MSJ 5:1–2, ECF No. 52; Medical Report, ECF No. 52-6). While he was at

the hospital, Plaintiff was administered several doses of Percocet, with the last one being administered on December 29, 2010, the day he was released from the hospital and returned to his home. (LVMPD MSJ 5:3–4; Medical Report, ECF No. 52-6; Compl. ¶¶ 8–9, ECF No. 1-2). After being released, Plaintiff was driven home by his wife and rested for a few hours while his wife left to pick up his blood pressure medication at the pharmacy. (LVMPD MSJ 5:9–11, ECF No. 52; Pl. Depo. 35:16–18, ECF No. 52-1; Compl. ¶ 10, ECF No. 1-2).

Plaintiff awoke from his nap and decided to drive to the pharmacy to fill his prescriptions. (Pl. Depo. 35:1–36:13, ECF No. 52-1). While driving, a third party called 9-1-1 to report that Plaintiff was "driving erratically," nearly hitting the caller and several parked cars. (LVMPD MSJ 6:4–14, ECF No. 52; Culotta Depo. 16:9–13, 19:20–21, 20:8–10, ECF No. 52-9; Incident Recall, ECF No. 52-10). Plaintiff was also reported to be moving back and forth in lanes and not maintaining a travel lane. (*Id.*). The LVMPD Air Unit was dispatched to locate Plaintiff and also observed his erratic driving. (LVMPD MSJ 6:4–14, ECF No. 52; Incident Recall, ECF No. 52-10). Plaintiff was initially pulled over by Officer Dentler of LVMPD after he went up over a curb. (LVMPD MSJ 6:13-15, ECF No. 52). Plaintiff then put his vehicle in reverse and nearly collided with her patrol vehicle. (*Id.* 6:16–17). After Plaintiff was pulled over, the Clark County Fire Department responded to the scene to perform a medical evaluation of Plaintiff. (*Id.* 7:4–5). The paramedics determined that there was no indication of any heart or stroke issues, and that Plaintiff was not having an acute medical episode. (*Id.* 7:20–21).

Subsequently, Officer Nakagawa responded to the dispatch and, upon arrival, began administering the Standardized Field Sobriety Test on Plaintiff. (*Id.* 7:1–2, 8:19–9:1). Prior to the test, Plaintiff attempted to inform Officer Nakagawa "of his condition," in that he had "recently been discharged from the hospital having suffered a stroke as indicated by the hospital identification bracelet still worn on his wrist." (Compl. ¶ 12, ECF No. 1-2). After failing the sobriety test, Plaintiff was arrested for driving under the influence. (LVMPD MSJ

9:4–12, ECF No. 52). Plaintiff was then taken into custody and held at the Clark County Detention Center for twelve hours. (Compl. ¶¶ 13–14, ECF No. 1-2). Upon release, the District Attorney did not immediately charge Plaintiff for the arrest but sent Plaintiff a letter advising that they retained the right to charge him at a later time if facts and circumstances warrant it. (LVMPD MSJ 11:12–13, ECF No. 52; DA's Letter, ECF No. 55- 5).

Plaintiff filed his Complaint against Defendants on August 27, 2012, alleging four causes of action: (1) violation of constitutional rights; (2) violation of constitutional rights based on a *Monell* claim; (3) false arrest/false imprisonment; and (4) intentional infliction of emotional distress. (Compl. ¶¶ 19–51, ECF No. 1-2). Officer Nakagawa filed his Motion for Summary Judgment stating that "Officer Nakagawa is entitled to qualified immunity" and Officer "Nakagawa was performing a discretionary function and is immune from suit under Nevada law." (Nakagawa MSJ 3:7–11, ECF No. 51). Additionally, LVMPD filed its Motion for Summary Judgment on June 6, 2014, alleging that "there was no constitutional violation and without a constitutional violation, there can be no *Monell* claim against LVMPD" and that "LVMPD is [i]mmune from Plaintiff's [s]tate [l]aw [c]laims." (LVMPD MSJ 17:3–5, 23:1, ECF No. 52). Plaintiff filed a Response arguing that "[t]his case exists because Defendant Nakagawa cannot think like a Sergeant," (Resp. 2:14, ECF No. 55) and Defendants filed a Reply retorting "[t]his case is not about how Officer Nakagawa thinks. It is about what he knew." (Reply 2:15, ECF No. 56).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. <u>DISCUSSION</u>

Plaintiff's Complaint enumerates four claims for relief alleging: (1) violation of constitutional rights; (2) violation of constitutional rights based on a *Monell* claim; (3) false arrest/false imprisonment; and (4) intentional infliction of emotional distress. (Compl. ¶¶ 19–51, ECF No. 1-2). Defendants seek summary judgment on each of Plaintiff's claims. (Nakagawa MSJ, ECF No. 51; LVMPD MSJ, ECF No. 52). Officer Nakagawa asserts that qualified immunity applies to the § 1983 claims and discretionary immunity applies to the state law claims. (Nakagawa MSJ 3:7–9, ECF No. 51). LVMPD alleges that Plaintiff's constitutional rights were not violated and, because there was probable cause for the arrest, "there can be no *Monell* claim against LVMPD." (LVMPD MSJ 16:19–17:4, ECF No. 52).

#### A. § 1983 Claims

Section 1983 actions allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To bring a successful § 1983 claim, a

plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 US 42, 49 (1988).  Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 US 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### 1. Probable Cause

Plaintiff asserts that LVMPD and Officer Nakagawa violated his constitutional rights "through unlawful detention and arrest without probable cause even though Plaintiff had not committed a crime." (Compl. ¶ 21, ECF No. 1-2).  Specifically, Plaintiff argues that he "was willfully, maliciously, and intentionally imprisoned without justification, or probable cause when [Plaintiff] told Defendant Police officer NAKAGAWA and Defendant Police Officer GEIGER of his condition and that he was recently released from Summerlin Hospital." (Compl. ¶ 22, ECF No. 1-2).

An arresting officer has the defense of probable cause in a § 1983 action alleging a false arrest. *See Pierson v. Ray*, 386 U.S. 547, 557 (1967).  Probable cause exists when "the facts and circumstances within the officer's knowledge are sufficient," to warrant the belief "by a reasonably prudent person that the person arrested has committed a criminal offense." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009); *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002).  When determining probable cause, the Court must consider the "totality of the circumstances" in order to "see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002).

Moreover, officers are entitled to immunity "if a reasonable officer could have believed that probable cause existed to arrest." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Furthermore, officers receive immunity even if the decision to arrest was mistaken, as long as the decision was reasonable.  *See Hunter*, 502 U.S. at 228.  An officer's mistake becomes unreasonable if committed by "the plainly incompetent or those who knowingly violate the law." *Id.*

Here, based on the undisputed facts, Officer Nakagawa had the requisite probable cause to arrest Plaintiff.  Even taking the evidence in the light most favorable to Plaintiff, Plaintiff's driving manner and the totality of the circumstances provided enough probable cause for an officer's arrest for driving under the influence.  While driving, Plaintiff was "moving back and forth in lanes and not maintaining a travel lane" (LVMPD MSJ 6:6–7, ECF No. 52).  Furthermore, Plaintiff failed the Standardized Field Sobriety Test and received medical clearance from the Clark County Fire Department's medical evaluation, which found he was not suffering from a stroke. (LVMPD MSJ 7:4–5; 8:4–8; 9:9–10, ECF No. 52).

A reasonably prudent person in Officer Nakagawa's scenario would discern from Plaintiff's driving that he was unwell and driving under the influence.  While Plaintiff informed Officer Nakagawa that he was having a stroke, the Clark County Fire Department's tests on Plaintiff had previously determined that Plaintiff was not having a stroke, and therefore concluded that Plaintiff did not need to go to the hospital. (*Id.* 7:20–21, 8:1–3).  Officer Nakagawa could therefore reasonably conclude that Plaintiff did not need to go to the hospital, and continue his procedures with probable cause.  Although Plaintiff may have actually had a stroke, based on the facts at hand, Officer Nakagawa still had probable cause to arrest Plaintiff, even if his reasonable belief was mistaken. *See Hunter*, 502 U.S. at 228.

Moreover, Officer Nakagawa is entitled to qualified immunity for reasonably believing

he had probable cause to arrest Plaintiff.  Although Plaintiff asserts his constitutional rights were violated, the violation was not clearly established in order to preclude qualified immunity. A reasonable officer would not believe that given the requisite probable cause—given the facts provided by the 9-1-1 caller about Plaintiff's driving, the erratic maneuvers witnessed by another officer who was almost run over, his performance on a field sobriety test, and results of a medical examination conducted by paramedics—that arresting Plaintiff was an unreasonable violation of a constitutional right.  Consequently, because Officer Nakagawa had probable cause to arrest Plaintiff and because he acted reasonably, Officer Nakagawa is entitled to qualified immunity in regards to the § 1983 claims.  Since there exists no genuine issue of material fact, the Court grants Officer Nakagawa's Motion for Summary Judgment on Plaintiff's § 1983 claims.

### 2. *Monell* Claims

Plaintiff alleges that "LVMPD failed to adequately train, direct, supervise, or control Defendant Police Officer NAKAGAWA and Defendant Police Officer GEIGER as to prevent the violation of Plaintiff's rights." (Compl. ¶ 31, ECF No. 1-2).  Plaintiff further alleges that "Defendant LVMPD failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" Officer Nakagawa, and the actions "were approved, tolerated and/or ratified by policy-making officers for the LVMPD." (*Id.* ¶¶ 35–36).

"Qualified immunity does not shield municipalities from liability." *Owen v. City of Independence*, 445 U.S. 622, 657 (1980).  In a § 1983 claim, a municipality is held liable for the unconstitutional acts of its officers through the plaintiff demonstrating that "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002).  However, in order to hold the municipality liable, the Plaintiff must prove

that the "deliberate action attributable to the municipality is itself the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).

In order to prove the deliberate conduct as the moving force, a plaintiff must show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. Furthermore, "the policy of inaction must be more than mere negligence." *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004). Failure to train requires a policy of "'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Additionally, a failure to supervise must be "sufficiently inadequate" in order to amount to deliberate indifference. *See id.*

Here, Plaintiff first asserts in his Complaint that LVMPD's liability derives from LVMPD's "direct knowledge of the fact that the stroke victims can be falsely imprisoned and denied medication and was not justified [sic], but rather represented an unconstitutional display of deprivation and denial of medical screening." (Compl. ¶ 36, ECF No. 1-2). In its motion, LVMPD asserts that "LVMPD goes to great lengths to ensure the quality of its officers," and that, "although Nakagawa was not a [Drug Recognition Expert], he had significant training and also voluminous experience from working on a DUI Task Force Unit." (LVMPD MSJ 11:17, 13:16–18, ECF No. 52). In response to LVMPD's Motion for Summary Judgment, Plaintiff presents no evidence or argument regarding his claims based on a denial of medication or of a medical screening and instead changes the basis of his *Monell* claim to LVMPD's failure "to ensure that a qualified Drug Recognition Expert was called to the scene to make the

determination as to whether [Plaintiff] was impaired." (Resp. 11:27–12:1, ECF No. 55).

However, Plaintiff has failed to demonstrate by admissible evidence that providing a Drug Recognition Expert was required, therefore, this omission does not rise to the level of "deliberate indifference," which must be shown for a *Monell* claim to succeed. Furthermore, LVMPD has seemingly provided the adequate care necessary in these scenarios by calling the Fire Department to the scene and having the Fire Department evaluate whether people, such as Plaintiff, are suffering from an acute medical emergency, such as a stroke. As such, no genuine issues of material fact exist regarding Plaintiff's claim of inadequate training and supervision, nor does Plaintiff provide evidence of causation. Therefore, LVMPD is entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

**B. State Law Claims**

Plaintiff asserts two state law claims: (1) false arrest/false imprisonment and (2) intentional infliction of emotional distress (IIED). (Compl. ¶¶ 40–51, ECF No. 1-2). Concerning the first state law claim, Plaintiff alleges that Officer Nakagawa's "arresting Plaintiff without legal or probable cause constitutes false arrest and false imprisonment." (*Id.* ¶ 41). Plaintiff then further asserts that the false arrest and false imprisonment were "extreme and outrageous causing Plaintiff to suffer emotional distress and was done without legal or probable cause." (*Id.* ¶ 49).

However, both claims are predicated on a finding that Officer Nakagawa lacked probable cause in making his arrest. (*Id.* ¶¶ 41, 49). Because the Court has already found that Officer Nakagawa had probable cause in arresting Plaintiff, Plaintiff's state law claims must fail.[1]

---

[1] Though the Court need not address Defendants' argument that the state discretionary act immunity applies, the Court notes that providing properly trained and supervised law enforcement officers the discretion to determine whether probable cause exists to arrest an individual that is driving erratically when that the person is impaired serves social, economic and public policy and is the type of discretionary function Nevada Revised Statutes § 41.032 appears to be intended to protect.

Therefore, because no genuine issue of material fact exists and Officer Nakagawa had probable cause to arrest Plaintiff, the Court grants Defendants' Motions for Summary Judgment on Plaintiff's false arrest/false imprisonment and IIED claims. Accordingly, Defendants are entitled to judgment as a matter of law on all claims.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 51) filed by Officer Nakagawa is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment (ECF No. 52) filed by Defendant Las Vegas Metropolitan Police Department is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this 31st day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge